## VALDESPINO v. DORRANCE & CO.
### (No. 7600.)

(Court of Civil Appeals of Texas.  Galveston.
Nov. 5, 1918.  On Motion for Rehearing, Jan. 16, 1919.)

1. APPEAL AND ERROR ⊚⟿544(3)—NECESSITY OF EXCEPTIONS—DECISION ON PLEA OF PRIVILEGE.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2062, providing that, where the ruling or other action of the court appears otherwise of record, no bill of exceptions shall be necessary to reserve an exception thereto, an exception is not necessary where a plea of privilege was overruled and the evidence heard was incorporated in the record.

2. APPEAL AND ERROR ⊚⟿544(1)—BILL OF EXCEPTIONS—NECESSITY—PLEA OF PRIVILEGE—NECESSITY OF EXCEPTIONS.

Although the effect of sustaining a plea of privilege is to change the venue of the suit, a motion for change of venue and a plea of privilege are entirely different proceedings, and pleas of privilege are not included within district and county courts rule 55 (142 S. W. xxi), providing for bills of exceptions to review rulings on change of venue.

3. VENUE ⊚⟿7—PLACE OF PERFORMANCE OF CONTRACTS—IMPLIED PROMISES.

An implied promise to perform a contract in a county other than that of defendant's residence will not place the venue of a suit thereon in such county.

4. VENUE ⊚⟿21—RESIDENCE OF DEFENDANT—EXCEPTIONS.

One who sues a defendant in a county other than that of his residence must bring his case clearly within the exceptions to the general rule that a defendant is entitled to be sued in the county of his own residence.

5. VENUE ⊚⟿7—PLACE OF PERFORMANCE OF CONTRACT.

If the terms of a written contract are such that it must necessarily be performed in a certain county, suit can be maintained thereon in such county.

6. VENUE ⊚⟿7—PLACE OF PERFORMANCE OF ORAL CONTRACT.

Suit on an oral contract to return overpayments, if any, on a sale of cotton upon being scaled and weighed in the county of the purchaser's residence, cannot be brought in such county under section 5 of the venue statute, but must be brought in the county of the seller's residence.

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Action by Dorrance & Co. against A. S. Valdespino.  From a judgment for plaintiffs, defendant appeals.  Reversed and rendered, and rehearing denied.

Goldstein & Miller, of El Paso, and G. P. Dougherty, of Houston, for appellant.

R. W. Franklin, of Houston, for appellees.

PLEASANTS, C. J.  This controversy grew out of the following facts:

Appellant is a resident of El Paso county, and resided and had his place of business in said county during the year 1915.  Appellees reside in Harris county, and during said year were engaged in the business of buying and selling cotton.  They had an agent, H. M. Freund, who represented them in El Paso county during the year mentioned.  On June 21, 23, and 26, 1915, appellees' agent, Freund, purchased cotton for them from appellant.  Each of these purchases was upon the following terms:  Appellant was to be paid for the cotton before it was shipped to Houston at an agreed price per pound on a basis middling in accordance with classification and weights accepted by Freund at El Paso, less an agreed amount to cover freight charges from El Paso to Houston.  When the cotton reached Houston, it was to be reweighed and reclassed, and final settlement between the parties was to be made in accordance with the Houston weights and classification.  This agreement was entirely oral.  In pursuance of the agreement the cotton was weighed and classified by Freund and delivered to the railway by appellant, who procured a bill of lading therefor showing that the cotton was consigned to his order "Notify."  The bill of lading was thereafter indorsed by appellant in blank and delivered by him to the Rio Grande Valley Bank & Trust Company at El Paso.

Appellant also gave the bank a memorandum showing the amount he was to receive for the cotton, and instructed the bank to credit his account with said amount when it was received.  Upon the presentation to him of the bill of lading Freund drew his draft on appellees in favor of the Rio Grande Valley Bank & Trust Company for the amount agreed to be paid by him for the cotton.  We do not think the finding material, but, if it could be so considered, the

judgment of the trial court in favor of appellees imports a finding by that court that the draft was delivered by Freund to appellant, who delivered it to the bank. Such finding is against the great preponderance of the evidence, but is supported by the testimony of Freund. The bank attached the bill of lading to the draft, credited appellant's account with the agreed amount, and forwarded the draft to Houston for collection. The appellees paid the draft upon presentation and received the bill of lading and the cotton. Each of the three purchases and shipments of cotton were made in the manner above stated. The bills of lading obtained by appellant contain no statement of the weights or classification of the cotton. These bills of lading were taken out in the form stated and indorsed by appellant in blank at the request of Freund to enable him to obtain the money from the El Paso bank on his draft on appellees.

According to the Houston weights and classification of the cotton, the amount received by appellant from Freund was about $2,000 in excess of the value of the cotton at the agreed price per pound on a basis "middling." This suit was brought by appellees against appellant to recover such excess.

Appellant filed and presented a proper plea of privilege to be sued in the county of his residence, and answered by general denial and special pleas, which need not be set out. The plea of privilege was heard on February 23, 1917, and was overruled by the court on February 28th. The defendant excepted to the ruling of the court; such exception being recited in the order of the court overruling the plea. The cause was tried on its merits at a subsequent term of the court on May 11, 1917, and appellees recovered a judgment against appellant for the amount claimed by them.

The agreed statement of facts filed with the record contains a statement of all the material facts adduced in evidence on the hearing of the plea of privilege and on the trial of the cause on the merits. The agreement of counsel for appellee appended to the statement of facts and the approval of the trial judge of the statement are as follows:

"I, R. W. Franklin, attorney for plaintiff in this cause, hereby agree that the facts set forth in the foregoing 56 pages are a true and correct statement of the facts adduced in evidence at said two hearings, but I decline to approve this statement of facts, because there is included in the same the evidence adduced at the hearing on the plea of privilege at a previous term, which I do not consider proper to be included in such statement of facts, and not the proper or legal way to present such testimony or preserve the exception."

"The foregoing statement of facts having been presented to me, the same is hereby approved as a true and correct statement of all the evidence adduced on the hearing of the plea of privilege

and on the trial on the merits, and order the same filed as a part of the record in this cause, and plaintiff's exception noted to the approval and filing of said statement of facts for the reason set out in his refusal set forth above.

"Henry J. Dannenbaum, Judge Presiding."

Appellees in due time filed a motion in this court to strike out the statement of facts, or in the alternative to strike out that portion of the statement containing the facts adduced on the hearing of the plea of privilege on the ground that it was not proper to include in the statement of facts adduced on the hearing of the plea of privilege, because such could be properly presented to this court only by a bill of exceptions to the action of the court overruling the plea of privilege prepared and taken at the time the plea was overruled, and because the statute does not authorize a statement of facts on appeal from a judgment rendered at one term of court to include evidence introduced on a partial hearing of the case at a previous term. This motion was taken with the case, and, in connection with appellees' objections to our considering the first assignment of error, complaining of the judgment of the court overruling the plea of privilege on the ground that the record contains no bill of exceptions to the order of the court overruling the plea, will be disposed of before considering the other questions in the case.

[1] We cannot agree with counsel for appellee in the proposition that a bill of exceptions is necessary in this case to authorize an appellate court to revise the ruling of a trial court on a plea of privilege. Article 2062, Vernon's Sayles' Civil Statutes, provides that—

"Where the ruling or other action of the court appears otherwise of record, no bill of exceptions shall be necessary to reserve an exception thereto."

As before stated, appellant's exceptions to the ruling of the court on the plea of privilege is recited in the order of the court overruling the plea. It is agreed by the parties that the statement of facts filed with the record in this case contains all of the facts adduced in evidence on the hearing of the plea. If the evidence upon which the court acted in overruling the plea could be properly presented to this court by an agreed statement of facts, it is clear that the ruling and action of the court fully appears from the record before us, and under the provisions of the statute above quoted no bill of exceptions is necessary to authorize us to reverse such ruling. If the plea had been heard with the case, there could be no question of the propriety of embodying in the statement of facts the evidence adduced on the plea with the evidence on the merits of the case, and no serious contention could

be made that in such case a bill of exceptions would be necessary. We do not think that the fact that the plea was heard at a different time from the trial of the case on the merits, and at a different term of the court, materially affects the question. At the time this plea was acted on appellant had no right to appeal from the order overruling his plea, and could only present his complaint of such order to the appellate court on his appeal from the final judgment. We can see no reason for holding that the evidence adduced upon the hearing of the plea could not be properly preserved and presented to this court with the evidence adduced upon the trial on the merits, in a statement of facts prepared after the final judgment, and we are cited to no case which so holds. In the case of Marshall v. Spillane, 7 Tex. Civ. App. 532, 27 S. W. 162, this court refused to sustain an assignment complaining of the action of the trial court sustaining oral exceptions to the defendant's plea of privilege. In passing upon the assignment the court say:

"This assignment is not supported by the record, for the only action by the court upon the plea shown by the record of which we can take notice is the order made August 10, 1893, which shows that the general demurrer, plea in abatement, and exceptions of defendant E. J. Marshall were overruled, to which he excepted, and took leave to file an amended answer. It does not appear from this order that exceptions were sustained to the plea, and there are no exceptions thereto in the record. For aught that appears otherwise, the court may have heard evidence upon the plea, and found that Killeen resided in Galveston county. At a subsequent term of the court, and at the term at which the case was tried on its merits, the defendant Marshall took a bill of exceptions to the action of the court in overruling the plea, which only shows, however, that, upon exceptions being raised to the sufficiency thereof, the court overruled the plea. The bill of exception should have been taken and filed at the term at which the ruling complained of was made. Rev. St. arts. 1358, 1363; Dist. Ct. Rules 53, 60 [142 S. W. xxi]; Price v. Lauve, 49 Tex. 80; Campbell v. Cook (Tex. Civ. App.) 24 S. W. 980."

We think it is clear that this case does not support the proposition that when a plea of privilege upon a hearing on the facts is overruled that the evidence upon which the court acted can only be presented to the appellate court by a bill of exceptions. It is manifest from the opinion of the court above quoted that the holding that a bill of exceptions should have been taken at the time the ruling of the court was made was based upon the fact that the ruling of the court did not otherwise appear of record. In the case of American Warehouse Co. v. Ray, 150 S. W. 764, the Court of Appeals for the Fourth District refused to sustain an assignment complaining of the ruling of the trial court on a plea of privilege, because there was no bill of exceptions taken to the ruling. From the statement in the opinion the ruling complained of was not otherwise shown by the record. The court also, after citing rule 55 for the district and county courts (104 Tex. 667, 142 S. W. xxi), which provides that as to rulings of the court upon application for continuance, for change of venue, and other incidental motions, bills of exceptions must be taken, says that, "as a plea of privilege now amounts to nothing more than * * * a change of venue, * * * it seems to come within the very language of" the rule.

[2] It is true that the effect of sustaining a plea of privilege is to change the venue of the suit, but a motion for change of venue and a plea of privilege are entirely different proceedings, and it cannot be held that the term "motions for change of venue," as used in the rule, includes pleas of privilege to be sued in the county of one's residence.

In the case of Luter v. Ihnken, 143 S. W. 675, the court which decided the case of American Warehouse Co. v. Ray, before discussed, in an opinion written by the learned justice who wrote the opinion in the case last mentioned, held that a bill of exceptions was not required to show the ruling of the trial court sustaining a plea of privilege. It is true this holding was based upon the fact that the statute made the order of the court overruling the plea a final judgment from which an appeal could be prosecuted, but the opinion further holds that the proceeding on a plea of privilege "cannot be classed as an application for a change of venue, although it may result in such change."

In the case of Crowell v. Bank, 163 S. W. 339, it is held by the Court of Appeals for the Third District that the ruling of a trial court refusing to sustain a plea of privilege could not be shown by a bill of exceptions, but must appear in the minutes of the court.

This review of the cases shows that the opinions of our appellate courts upon the question of the application of rule 55 to rulings upon pleas of privilege are somewhat conflicting and confusing.

We are of opinion that a bill of exceptions was never necessary when the order overruling the motion and entered in the minutes of the court recited that the party against whom the ruling was made excepted thereto, and if the ruling was upon the facts, such facts were shown in a statement of facts. If under the old statute the plea was sustained, the case was dismissed, and, the judgment of dismissal being a final judgment, no bill of exceptions was required to entitle the plaintiff to have the ruling of the court revised on appeal.

The present statute, which provides that if the plea is sustained the suit shall not be dismissed, but transferred to the proper coun-

ty, gives the right of appeal to either party from the ruling or judgment of the court on the plea, and, such order being a part of the record of the case, no bill of exceptions is necessary, and if evidence is heard by the court, and the plea determined on the facts, such facts should be presented to the appellate court by a statement of facts prepared as in other appeals from final judgments of a trial court. As we have before stated, at the time the plea of appellant in this case was overruled he had no right of appeal, and the facts upon which the court acted might have been shown by a bill of exceptions, but he was not required to present them in that way.

It follows from these conclusions that appellees' motion to strike out that portion of the statement of facts containing the facts shown on the hearing of the plea, and their objections to our considering appellant's assignment of error attacking the ruling of the court on the plea of privilege, cannot be sustained.

This brings us to a consideration of the question of whether the order of the court overruling the plea of privilege was correct.

The defendant in this case was not sued in the county of his residence, and the ground upon which such valuable statutory right was denied him was that the evidence was sufficient to show that he had contracted in writing to pay plaintiffs the sum claimed by them in Harris county, where the suit was brought, and the venue of the suit was thus placed in Harris county under section No. 5 of the venue statute (Rev. St. 1911, art. 1830). In the case of Lasater v. Waits, 95 Tex. 555, 68 S. W. 500, our Supreme Court says:

"The rule of construction which has always been applied in this state is that a plaintiff, basing his action upon one of the exceptions [to the venue statute], must bring his case clearly within it. The defendant is not to be denied the privilege of being sued where he resides upon a strained or doubtful construction of the exceptional provision."

[3-5] It is well settled that an implied promise to perform a contract in a county other than that of the defendant's residence will not place the venue in such county. One who sues a defendant in another county than that of the defendant's residence must bring his case clearly within one of the exceptions to the general rule. Mahon v. Cotton, 13 Tex. Civ. App. 239, 35 S. W. 869; Burkitt & Barnes v. Berry, 143 S. W. 1187. This does not mean that the written contract must recite in express and exact words that it is to be performed in the county in which the suit is brought, but, if the terms of the written contract are such that it must necessarily be performed in that county, it comes within the statute, and suit can be maintained thereon in the county in which it is performable.

Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399.

With these well-settled rules of decision in mind, we agree with counsel for appellant that the evidence in this case wholly fails to show that appellant contracted in writing to pay appellees the sum claimed by them in this suit in Harris county.

The only written instruments introduced in evidence to which appellant was a party were the bills of lading issued to him by the railway company and indorsed by him in blank, and delivered to the El Paso bank. These bills of lading consigned the cotton to appellant's order at Houston, Tex., with the word "Notify" indorsed thereon, and in one or two of them the indorsement was "Notify Dorrance & Co." These bills of lading only call for so many bales of cotton, and contain no statement as to the weight or class of the cotton. Under the undisputed evidence which we have before set out the value of the cotton at the price agreed upon, based upon the weights and classification accepted by appellees' agent, Freund, was to be paid appellant before the cotton left El Paso, and was so paid to him by the amount being placed to his credit in the El Paso bank in accordance with the terms of the agreement. Upon these facts, giving the bills of lading indorsed by appellant the force and effect of a written contract between him and appellees, by no sort of construction can they be held to bind appellant to do more than to deliver to appellees at Houston, Tex., the number of bales of cotton called for therein. It certainly cannot be held that the drafts drawn by appellees' agent, Freund, on appellees in favor of the El Paso bank added anything to the obligations of appellant evidenced by the bills of lading. It is true the drafts were attached to the bills of lading and were paid by appellees at Houston as a condition to the delivery of the bills of lading, the possession of which was necessary to enable them to obtain possession of the cotton, but they were not signed or indorsed by appellant, and formed no part of his written contract with defendant. If, however, he had drawn the drafts, and the money called for therein had been paid him or his assignee at Houston, the drafts and bills of lading, considered together, would only evidence a written contract on his part to deliver to appellees at Houston the identical bales of cotton called for in the bills of lading, and it is not contended that this was not done; for it affirmatively appears that the cotton called for in the bills of lading was delivered at Houston and received by the appellees.

[6] The agreement between Freund and appellant that the cotton was to be reweighed and reclassed at Houston, and, if upon such reweighing and reclassification the amount paid appellant at El Paso was not the full value of the cotton at the agreed price per

pound, Freund or appellees were to pay appellant the balance so found to be due him, and if the amount that had been paid appellant exceeded the value of the cotton, appellant was to return the amount he (appellant) had been overpaid, was oral. It is upon this oral agreement, no part of which is evidenced by any writing, that appellees' suit is based. No case can be found that will sustain the contention that such oral agreement can be grafted upon the contract evidenced by the drafts and bills of lading in this case, and thus become metamorphosed into a contract in writing binding appellant to pay appellees in Harris county the amount due them under such agreement. The opinions of this court in the cases of Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399, and Callender v. Short, 34 Tex. Civ. App. 364, 78 S. W. 366, were based upon facts essentially different from the facts of this case. The bills of lading and drafts in each of those cases by notations or recitals therein, taken together, were held to constitute a contract by which the defendant bound himself, in consideration of the payment of the amount of the draft, to deliver to the plaintiff in the county of plaintiff's residence grain in the one case and cotton in the other of a specified weight and class, and upon breach of the contract to deliver the specified character of grain or cotton, suit to recover damages therefor could be maintained in the county in which the defendant had contracted to make the delivery.

The opinion in the case of Keller v. Mangum, 161 S. W. 19, does not disclose the contents of the bill of lading, which, together with the draft, in the opinion of the court, constituted a contract in writing performable in the county in which the cotton was delivered. The holding is based upon the theory that the defendant failed to deliver cotton of the value called for in the written contract evidenced by the bill of lading and the draft, and the suit, being for breach of said contract, could be maintained in the county where the cotton was contracted to be delivered. This was the holding in the Seley and Callender Cases, and those cases are cited in the Keller-Mangum Case in support of the opinion. We do not think the facts disclosed in the opinion bring the case within the rule announced in the cases cited, but all of the facts may not have been set out in the opinion. There is nothing in the opinion in the case of Seed & Grain Co. v. Blumberg, 162 S. W. 1, which sustains appellees' contention in this case. We think the present case is ruled by the case of Sanders v. Hester Cotton Co., 195 S. W. 270, and all that was necessary in this opinion upon this question was to have cited the clear and well-considered opinion of Justice Graves in the Sanders Case, but in view of the fact that able members of the bar and some of our district judges seem to construe the Seley and Callender Cases as holding that, whenever a bill of lading and a draft are the means by which a seller receives payment for goods sold and shipped by him out of the county of his residence, he can be sued in the county in which the goods were delivered and draft paid upon any cause of action growing out of or connected with the sale of the goods, we deemed it not amiss to review the cases and discuss the question at some length. The opinions in the Seley and Callender Cases were by this court, and the writer of this opinion wrote the opinion in the Callender Case, and in neither of those cases did the court hold that a defendant could be sued out of the county of his residence under section 5 of the venue statute upon a cause of action arising from a breach of contract, unless such contract is in writing and expressly provides for its performance in a county other than that of the residence of the defendant, or its terms and nature are such that it must necessarily be so performed, and we do not think the opinions in these cases can be fairly construed otherwise. The right to be sued where one resides and is known is a substantial right long recognized and guarded in Anglo-Saxon law and expressly guaranteed by the statute of our state, and such right should not be frittered away by loose or too liberal construction of the exceptions to the rule provided by the statute. The necessities or conveniences of large business enterprises which affect the public welfare might induce the Legislature to further extend the exceptions, but until the Legislature does this by amending the statute, the courts must enforce it as it is written, giving the language of the act its plain intent and meaning.

Judgment of the court below must be reversed, and judgment here rendered directing the transfer of the suit from Harris county to El Paso county, and it has been so ordered.

Reversed and rendered.

### On Motion for Rehearing.

In the motion for rehearing filed by appellees it is very earnestly insisted that this court erred in stating in the opinion heretofore filed herein that the bills of lading and drafts in the cases of Seley v. Williams, 20 Tex. Civ. App. 405, 50 S. W. 399, and Callender v. Short, 34 Tex. Civ. App. 364, 78 S. W. 366, "by notations or recitals therein taken together were held to constitute a contract by which the defendant bound himself, in consideration of the payment of the amount of the draft, to deliver to the plaintiff in the county of plaintiff's residence grain in the one case and cotton in the other of a specified weight and class, and upon breach of the contract to deliver the specified character of grain or cotton suit to recover damages therefor could be maintained in the county in which the defendant had contracted to make the delivery."

This statement is inaccurate as applied to the Callender-Short Cases if it be construed to mean that there was any notation on the bills of lading or drafts in evidence in that case indicating the grade or weight of the cotton. The bills of lading in that case, just as in this case, only called for a certain number of bales of cotton, and the drafts were drawn for the value of the cotton at the agreed price per pound, based on grade and weight at the point of shipment. Neither the bills of lading nor the drafts contained any notations or recitals indicating the grade or weight of the cotton.

The contract under which the cotton was purchased provided that the cotton should be paid for at so much per pound f. o. b. cars at Houston, on a basis middling, Houston weights and classification.

This court held, in effect, in the case mentioned, that the bills of lading and the drafts above described constituted a contract in writing by the defendant to deliver to the plaintiffs at Houston cotton which, when classified and weighed at Houston, would at the agreed price per pound be worth the amount of the drafts, and for a breach of this contract suit could be maintained against the defendant at Houston.

We are not inclined to question the correctness of that holding, and any expressions in our main opinion which can be so construed were not so intended, and are here withdrawn.

The facts in this case distinguish it from the Callender Case. As stated in our main opinion, the undisputed evidence in this case shows that the draft on appellees was not drawn by appellant, nor indorsed by him. He was not the payee in the draft which was drawn on appellees by its agent at El Paso in favor of the El Paso bank. It was cashed by the El Paso bank, and the proceeds paid to appellant in El Paso. The cotton was weighed by the public weigher at El Paso, and a sample from every bale was examined by appellees' agent, Freund, after which he began negotiations with appellant for the purchase of the cotton. The parties finally agreed upon the price, and agreed amount was paid appellant in the manner stated. Appellant testified:

"The purpose of having these bills of lading taken in my name as the consignor for the shipment of cotton from El Paso to Houston was so that Mr. Freund could negotiate his drafts in order to pay me the money for the cotton. I did not suggest to him that it be fixed that way. He suggested it to me. * * * I explained to Mr. Freund fully. I wanted the cash there in El Paso."

Appellees' agent, Freund, testified:

"It is a fact that I paid Mr. Valdespino in cash the price of the cotton that he wanted there at El Paso, the full amount of it accord-ing to my class and weights there at El Paso, according to what we had agreed on there at El Paso. I paid him every cent of the value of the cotton that we had agreed on there at El Paso."

How is it possible to get out of these bills of lading and drafts a contract on the part of appellant to deliver cotton of any specific weight and grade at Houston? Appellant was not a party to the drafts, and the drafts and the bills of lading, taken together, fail to show what amount appellant was paid for the cotton, and appellee's cause of action depends entirely upon the oral contract of sale made by appellant with appellee's agent at El Paso. This being true, it necessarily follows that a suit for the breach of that contract could not be maintained over appellant's objection, elsewhere than in the county of his residence.

We are fully satisfied that our disposition of this appeal as indicated by our main opinion was correct, and the motion for rehearing must be overruled.

Overruled.

---

⊛For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes